UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HOWARD BROWN | CIVIL ACTION |
| VERSUS | NO: 22-00135 |
| LOUISIANA STATE, et al. | SECTION: T (3) |

## **ORDER**

    Before the Court are a Motion to Dismiss for Lack of Jurisdiction and Motion to Dismiss for Failure to State a Claim filed by Defendant Judge Bernadette D'Souza (R. Doc. 7), to which Plaintiff has filed an opposition (R. Doc. 8). Judge D'Souza has filed a reply (R. Doc. 18). Also before the Court are a Motion to Dismiss for Lack of Jurisdiction and a Motion to Dismiss for Failure to State a Claim by Defendants Kim Glapion Bertrand, Sandra A. Broussard, Donna Clayton, Chip Coulter, Department of Children and Family Services, Department of Public Safety and Corrections Louisiana State, Catherine Heitman, George J. Higgins, Jr., Phenda Hodnett, Eric Horent, Shavana Howard, Konitra K. Jack, Mary Kenerson, James M. LeBlanc, Louisiana State, Sherry Maitre, Office of Motor Vehicles, Terri Ricks, Karen St. Germain, and Marketa Garner Walters (R. Doc. 12). Plaintiff has filed a response in opposition (R. Doc. 19). The Court finds the motions have merit and therefore will GRANT the Motions to Dismiss.

    Plaintiff, Howard Brown, filed his complaint on January 24, 2022, in the Eastern District of Louisiana for the events surrounding surround a child support issue out of the State of California. In his Complaint, he named as defendants, in both their individual and official capacities, the State of Louisiana through the Department of Public Safety & Corrections, the Department of Children and Family Services, and the Office of Motor Vehicles, James LeBlanc,

1

Marketa Garner Walters, Terri Ricks, Eric Horent, Rhenda Hodnett, Shavana Howard, Kim Bertrand, Catherine Heitman, Chip Coulter, Karen St. Germain, Sherry Maitre, Konitra Jack, Sandra Broussard, Donna Clayton, Mary Kenerson, and George Higgins Jr.

Plaintiff alleges that the defendants, many of whom are alleged to be employed with the Louisiana Department of Children and Family Services ("DCFS") and the Louisiana Department of Public Safety and Corrections, Office of Motor Vehicles ("OMV"), violated his civil rights in connection with the enforcement of an out-of-state child support order and suspension of his driver's license for failure to pay child support. Plaintiff asserts that sometime in 2018, DCFS informed Plaintiff that he was required to pay child support related to a child support case in California. On April 8, 2019, Plaintiff asserted that OMV informed him via certified mail that his driving privileges had been revoked and his driver's license suspended as a result of non-payment of child support. Plaintiff admits that he took no action regarding his suspension until April 9, 2021 when he sent a letter to Ms. Walters and "other named defendants" asserting that a mistake had been made. Plaintiff subsequently requested a meeting with members of DCFS and met with them on May 12, 2021.

On January 24, 2022, Plaintiff filed the instant matter. Plaintiff asserts that the revocation of his license was based on a process that gives the State of Louisiana the ability to restrict licenses through the Louisiana Children's Code. However, he contends the basis for initiating the process was invalid as it relates to his license revocation. Plaintiff contends the State executed a petition to register foreign child support order that was not based on an ongoing child support issue, but was instead based on an issue in arrears. Plaintiff alleges the process used to instigate a legal procedure deprived him of due process and equal protection of the laws.

Plaintiff asserts five causes of action related to the revocation of his driving privileges pursuant to (1) 42 U.S.C. § 1983,8 (2) 18 U.S.C. § 242,9 (3) Fourteenth Amendment of the U.S. Constitution, (4) the Social Security Act, and (5) the Fair Debt Collection Practices Act. Plaintiff seeks declaratory relief and injunctive relief "to return [his] driver's license to full and active status", in addition to damages and costs.

The defendants first argue that the plaintiff's official capacity claims against them should be dismissed for lack of subject matter jurisdiction based on the state's Eleventh Amendment sovereign immunity. Motions to dismiss based on Eleventh Amendment sovereign immunity are analyzed under Rule 12(b)(1) of the Federal Rules of Civil Procedure, which provides that a court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *St. Tammany Parish ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir.2009). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. U.S.*, 281 F.3d 158, 161(5th Cir.2001).

Otherwise, Defendants' requests for dismissal are analyzed under Fed.R.Civ.P. 12(b)(6). A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of a plaintiff's allegations. Fed.R.Civ.P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 652, 678, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference

3

that the defendant is liable for the misconduct alleged ... Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Id.* Courts will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir.2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir.2005)); *see also Iqbal*, 556 U.S. at 664, 129 S.Ct. at 1940 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." This broad grant of immunity also extends to federal suits against a state brought by the citizens of that state. See Hans v.. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

A state need not be named in a complaint in order to trigger the provisions of the Eleventh Amendment, as it bars any suit where a state is a "real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974) ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). Eleventh Amendment immunity covers state agencies that may be properly characterized as arms of the state. *Porche v. St. Tammany Parish Sheriffs Office*, 67 F.Supp.2d 631, 632 (E.D.La.1999). Moreover, the Eleventh Amendment bars

claims for damages when the claimant is suing state officers in their official capacities, and the damages would be paid out of the state treasury. *Chrissy F. by Medley v. Mississippi Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir.1991).

Here, there can be no doubt that the defendant judge, state agencies, and the individuals in their official capacities are immune from suit. In accordance with longstanding precedent, federal courts lack jurisdiction over suits against state officials sued in an official capacity for monetary relief. Therefore, this Court lacks jurisdiction over all claims for monetary relief against the defendants in their official capacity.

Additionally, Plaintiff's claims are barred by the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The *Younger* abstention doctrine is based upon "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Generally, the *Younger* abstention doctrine requires that federal courts decline to exercise jurisdiction over lawsuits when three conditions are met: 1) the federal proceeding would interfere with an "ongoing state judicial proceeding"; 2) the state has an important interest in regulating the subject matter of the claim; and 3) the plaintiff has "an adequate opportunity in the state proceedings to raise constitutional challenges. *Bice v. Louisiana Public Defender Board*, 677 F.3d 712, 716 (5th Cir. 2012)(citing *Middlesex County Ethics Comm., supra*).

Here, Plaintiff seeks declaratory relief that would interfere with the ongoing state judicial proceedings. Plaintiff does not dispute that his appeal with respect to the child support and suspension of his driving privileges for failure to pay child support is pending and that any orders

from this Court would threaten the integrity of those proceedings. Similarly, there can be no doubt that Louisiana has an important interest in the enforcement of child support awards. Finally, Plaintiff has an adequate opportunity to challenge the constitutionality of the child support awards in state court. Indeed, Plaintiff has invoked his appellate rights in state court. Accordingly, the Court finds that the *Younger* abstention doctrine applies and that Plaintiffs claims may be dismissed on that basis.

Finally, this Court notes that Plaintiff's claims under § 1983 appear to be prescribed on their face. The Petition states that on April 8, 2019 OMV informed him via certified mail that his driving privileges had been revoked and his driver's license was suspended as a result of non-payment of child support. Plaintiff took no action regarding his suspension until April 9, 2021, when he sent a letter to Ms. Walters and "other named defendants" asserting that a mistake had been made. Plaintiff's underlying cause of action for his claims against the defendants is that his license was improperly revoked, and as such that revocation forms the operative nexus of fact. Because Plaintiff asserts he became aware that his license had been revoked on April 8, 2019, he had one year from that date – April 8, 2020 – to file suit. Plaintiff filed this lawsuit on January 24, 2022, almost two years after the last date for timely filing. Accordingly, Plaintiff's claims appear to be prescribed on their face.

Accordingly, for the reasons stated above,

**IT IS ORDERED** that Defendants' Motions to Dismiss (R. Docs. 7 and 12) are GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 30th day of September 2022.

_____
Greg Gerard Guidry
United States District Judge